**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**(Eastern Division)**

EDWARD MILLER, JEROME MCDANIEL,
MATTHEW DOWNING, and JASMINE WILDER,
on behalf of themselves and all others similarly
situated,

        Plaintiffs,

   v.

GOJO INDUSTRIES, INC., d/b/a PURELL,

        Defendant.

Civil Action No. _____

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiffs Edward Miller, Jerome McDaniel, Matthew Downing and Jasmine Wilder ("Plaintiffs"), by and through undersigned counsel, as and for their Complaint against Defendant Gojo Industries, Inc., d/b/a Purell ("Defendant"), allege as follows:

### Preliminary Statement

1. This is a class action brought by the Plaintiffs, on behalf of themselves and all other individuals who purchased Purell-branded Advanced Hand Sanitizer products ("Products"), including gels and foams. The case arises out of Defendant's false and misleading labeling, advertising and marketing of Purell.

2. Defendant has advertised and marketed, and continues to advertise and market, that the Products help prevent infection, as well as diseases such as the flu and the common cold. Defendant's labeling and marketing of the Products invokes specific statistics and other claims which imply to consumers that the statistics are backed by sound scientific evidence, when in fact,

there is no sound scientific evidence to support the statistics or other claims. Therefore, the labeling and marketing of the products is misleading because they imply sound scientific support when none exists.

3.     For example, the front label of the Products prominently claims that "Purell Advanced Hand Sanitizer kills 99.99% of illness causing germs." Defendant additionally makes claims, on the labels and elsewhere, regarding the "strength" of the Products relative to other similar products, including that they are "2X" as powerful as the products of competitors, or that one squirt of Purell Advanced Hand Sanitizer gel can do the work of two squirts of other products. These claims, by their specific nature and invocation of particular statistics (i.e., 99.99% and 2X), imply and create the impression that the claims have a reliable scientific basis. To the contrary, these claims lack a scientific basis, rendering the affirmative misrepresentations misleading.

4.     Defendant has falsely advertised the qualities and capabilities of the Products and misled consumers into purchasing the Products, which Products were and are available directly from Defendant and from many third party retailers.

5.     Plaintiffs and members of the Classes (defined below) purchased the Products based on the claims made in Defendant's false labeling, advertising and marketing.

6.     On January 17, 2020, the Food and Drug Administration ("FDA") sent a warning letter ("Warning Letter") to Defendant that described the Products as merely topical antiseptics, which were not proven to be safe and effective in preventing infection or various diseases referenced and implied in Defendant's false advertising.

7.     The Warning Letter specifically noted that additional representations Defendant had made about the Products' effectiveness against the flu, norovirus, and ebola were

unsubstantiated insofar as the FDA was not aware of any study showing that killing bacteria or virus on skin reduced the likelihood of infection or disease in users.

8.      Because the representations Defendant made with respect to the Products assert claims of efficacy and imply clinical support for those claims, the Warning Letter identified the Products as unapproved "new drugs" "intended for the diagnosis, cure, mitigation, treatment, or prevention of disease" within the meaning of the Food Drug & Cosmetic Act ("FDCA"), and the FDA concluded that Defendant failed to comply with the FDCA when it marketed the Products with the unsubstantiated claims.

9.      Defendant's claims about the Products' effectiveness at preventing infection and disease, which the FDA strongly suggested were false and misleading in the Warning Letter, allowed Defendant to increase sales of the Products and enabled Defendant to compete effectively against competitors.

10.     As detailed herein, Defendant's conduct violated the consumer protection and warranty laws of various states and resulted in Defendant's unjust enrichment. Plaintiffs and Class members purchased the Products based on Defendant's false and misleading claims. Plaintiffs and Class members received products that were less valuable than Defendant represented the Products to be, i.e., as Products proven to prevent or reduce infection and disease. Therefore, Plaintiffs and Class members suffered economic damages as a result of Defendant's false and misleading claims concerning the Products, including the difference in value between the Products as represented by Defendant and the Products Defendant actually provided.

11.     Defendant is liable to Plaintiffs and Class members for all damages resulting from these violations.

**Parties**

12.     Plaintiff Miller is a resident of California who purchased at least one of the Products during the period from March 13, 2016 to the present.  But for Defendant's deceptive conduct alleged herein, Miller would not have purchased the Products or would have paid less for them.

13.     Plaintiff McDaniel is a resident of Michigan who purchased at least one of the Products from March 13, 2014 to the present.

14.     Plaintiff Matthew Downing is a resident of Massachusetts who purchased at least one of the Products from March 13, 2016 to the present.

15.     Plaintiff Wilder is a resident of Oregon who purchased at least one of the Products from March 13, 2016 to the present.

16.     Defendant GOJO Industries, Inc., is an Ohio corporation with its principal place of business in Akron, Ohio. It manufactures and distributes the Products throughout the country, including in California, Michigan, Massachusetts, and Oregon, through third party retailers, including retailers suggested by Defendant's own website.

**Jurisdiction and Venue**

17.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332(d) and 1453, because (1) this action is a "class action," which contains class allegations and expressly seeks certification of a proposed class of individuals; (2) the putative Nationwide Class and State Subclasses defined below consist of more than one hundred proposed class members; (3) the citizenship of at least one class member is different from Defendant's citizenship; and (4) the aggregate amount in controversy of the claims of Plaintiffs and the putative Nationwide Class and State Subclasses exceeds $5,000,000, exclusive of interest and costs.

18.     This Court has personal jurisdiction over Defendant because Defendant is headquartered in Ohio, and many of the actions of the Defendant that gave rise to the claims against them in this action took place and emanated from Ohio. Defendant also purposefully availed itself of the privilege of conducting business activities in Ohio (e.g., marketing and selling the Products in Ohio), Plaintiffs' claims arise out of those activities, and the exercise of jurisdiction over them is constitutionally reasonable.

19.     Venue is proper in this jurisdiction pursuant 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction in this District, and the actions of the Defendant that give rise to the claims against them in this action took place and emanated from this District. Venue is also proper in this jurisdiction pursuant to 18 U.S.C. § 1965.

## Factual Allegations

20.     Defendant manufactures and distributes the Products, consisting primarily of ethyl alcohol, under the brand Purell, throughout the United States via third party retailers and Defendant's website (which can also redirect consumers to third party retailers). The Products, which specifically include PURELL® Healthcare Advanced Hand Sanitizer Gentle & Free Foam," "PURELL® Healthcare Advanced Hand Sanitizer Gel," "PURELL® Healthcare Advanced Hand Sanitizer Foam," "PURELL® Healthcare Advanced Hand Sanitizer Gentle & Free Foam ES6 Starter Kit," and "PURELL® Healthcare Advanced Hand Sanitizer ULTRA NOURISHING™ Foam," are sold in various sizes.

21.     Defendant made false and misleading claims about the effectiveness of the Products in preventing infection and disease (including influenza, norovirus, and ebola) in its advertising and marketing materials, on its websites, and on the labels of the Products themselves. Defendant

made the same or substantially similar misrepresentations upon which Plaintiffs' claims are based with respect to each of the Products.

22.     The Products each included and include substantially similar representations on the labels, including without limitation "2X Sanitizing Strength*: 1 squirt PURELL Advanced = 2 squirts Other National Brands," "Advanced Hand Sanitizer" and "Kills 99.99% of Illness Causing Germs," as depicted below:



23.     Defendant also claimed via Internet advertising, including on the Products' websites at www.gojo.com and www.purell.com, and social medial accounts, that the Products could prevent illness such as colds and flu.

24.     Defendant also claimed that the Products "kill[] more than 99.99% of most common germs that may cause illness in a healthcare setting, including MRSA & VRE" and have been proven to help prevent students and new teachers from missing time at school due to illness.

25.     On January 17, 2020, the FDA issued a Warning Letter to Defendant regarding its false and misleading marketing of the Products.[1] The Warning Letter advised Defendant that, as currently formulated and labeled, the Products were unapproved drugs in violation of the FDC Act because the Products' labels and marketing materials claimed that they were intended for the diagnosis, cure, mitigation, treatment, or prevention of disease, even though the FDA was not aware of any reliable studies concluding that the Products help prevent the spread of infection and disease.

26.     The Warning Letter first detailed a series of false and misleading claims that Defendant made and/or continues to make regarding the Products on the labels and in other marketing materials, as follows:

> This letter concerns your firm's marketing of the PURELL® Healthcare Advanced Hand Sanitizer product line that includes the over-the-counter (OTC) drug products "PURELL® Healthcare Advanced Hand Sanitizer Gentle & Free Foam," "PURELL® Healthcare Advanced Hand Sanitizer Gel," "PURELL® Healthcare Advanced Hand Sanitizer Foam," "PURELL® Healthcare Advanced Hand Sanitizer Gentle & Free Foam ES6 Starter Kit," and "PURELL® Healthcare Advanced Hand Sanitizer ULTRA NOURISHING™ Foam." On your websites, your firm markets these products individually as well as in combination with other PURELL products for use in various settings, such as athletic facilities, schools, and offices, under the title of "THE PURELL SOLUTION." In this letter, we

---

[1] https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/gojo-industries-inc-599132-01172020.

collectively refer to these products as "PURELL® Healthcare Advanced Hand Sanitizers." Based on claims on your product websites, which also include links to webpages where these products may be purchased, the PURELL® Healthcare Advanced Hand Sanitizers are intended for use as consumer and healthcare antiseptics.

As currently formulated and labeled, PURELL® Healthcare Advanced Hand Sanitizers are unapproved new drugs in violation of section 505(a) of the Federal Food, Drug, and Cosmetic Act (FD&C Act or Act), 21 U.S.C. 355(a). Introduction or delivery for introduction of such products into interstate commerce is prohibited under section 301(d) of the FD&C Act, 21 U.S.C. 331(d). These violations are described in more detail below.

Unapproved New Drugs

Examples of claims observed on your product websites, www.gojo.com and www.purell.com, and social media accounts for PURELL® Healthcare Advanced Hand Sanitizers that provide evidence of the products' intended uses (as defined in 21 CFR 201.128) include, but may not be limited to, the following:

On your PURELL® Healthcare Advanced Hand Sanitizer product pages:

"Kills more than 99.99% of most common germs that may cause illness in a healthcare setting, including MRSA & VRE"

On your webpage titled, "GOJO Blog What You Need to Know About Candida auris in the Healthcare Setting":

"To help prevent transmission, hand hygiene with an alcohol-based hand sanitizer is recommended along with hand washing if hands are soiled. PURELL® Advanced Gel, Foam, and Ultra-Nourishing Foam Hand Sanitizer products demonstrated effectiveness  against a drug resistant clinical strain of Candida auris in lab testing."

On your webpage titled, "The PURELL SOLUTION™ for Athletic Facilities":

"PURELL® Products Help Eliminate MRSA & VRE . . . 100% MRSA & VRE Reduction[] . . . A recent outcome study shows that providing the right products, in a customized solution, along with educational resources for athletes and staff can reduce MRSA and VRE by 100%[]"

On your webpage titled, "The PURELL SOLUTION™ for Education":

"51% Reduced Student Absenteeism . . . PURELL® products have proven results in delivering positive health outcomes. Illness causes 144 million lost school days each year []. . . In a recent study, student absenteeism was reduced by 51% when PURELL hand hygiene products were used in conjunction with a curriculum to teach kids about good hand hygiene[] . . . 10% Less Teacher Absenteeism . . .

PURELL® Products Help Teachers Stay Well[] . . . New teachers are particularly more susceptible to student borne illness[]. . . . In one study, schools that combined hand-hygiene education with PURELL® products reduced teacher absenteeism by 10%[]".

On your webpage titled, "PURELL® Products are Proven to Reduce Absenteeism":

"PURELL® Products are Proven to Reduce Absenteeism . . . On average, illness causes 144 million lost school days each year[] and missing school can have a significant effect on a student's performance. . . . Research has shown that when used alongside a curriculum to teach students about hand hygiene, PURELL® products can reduce student absenteeism by up to 51%[].. . . Additionally, teachers who follow this program also experience a 10% reduction of absenteeism[]."

On your Facebook page at https://www.facebook.com/purell/:

"The PURELL SOLUTION™ has the products you need to help prevent the spread of infection this germ season. Visit GOJO.com for more information."

In addition, you make statements within the "Frequently Asked Questions" on your website, www.gojo.com, that suggest that PURELL® Healthcare Advanced Hand Sanitizers, which are formulated with ethyl alcohol, may be effective against viruses such as the Ebola virus, norovirus, and influenza.

Specifically, your website states:

Illness Outbreak. . .

What Steps Can I Take to Prevent the Spread of Norovirus? Even though norovirus is highly contagious, there are ways you can reduce the risk of its spread. According to the Centers for Disease Control and Prevention, follow these steps to reduce the spread of the virus. 1. Practice good hand hygiene. Make sure to wash your hands with soap and water at key moments, especially after using the restroom since the virus can spread through stool. Alcohol-based hand sanitizers with at least 60% alcohol can be used in addition to handwashing . . .

Are PURELL® Hand Sanitizer products effective against the flu? The FDA does not allow hand sanitizer brands to make viral claims, but from a scientific perspective, influenza is an enveloped virus. Enveloped viruses in general are easily killed or inactivated by alcohol. The World Health Organization (WHO) and the Center for Disease Control and Prevention (CDC) are recommending the use of alcohol-based hand sanitizer as a preventive measure for flu prevention"

Is PURELL® Advanced Hand Sanitizer Effective Against Ebola?. . . As of today, we are not aware of any hand sanitizers that have been tested against Ebola viruses, including PURELL® Advanced Hand Sanitizer. However, it is important to note that the Ebola virus is an enveloped virus. Enveloped viruses in general are easily killed or inactivated by alcohol. World Health Organization (WHO) and the Center

for Disease Control and Prevention (CDC) are recommending the use of alcohol-based hand sanitizer as a preventive measure during this outbreak . . .

27. The Warning Letter then explained that, because Defendant was marketing the Products as intended to reduce or prevent disease, despite the fact that there is no adequate and well-controlled study establishing that claim, Defendant was marketing and selling the Products as unapproved drugs in violation of the FDC Act:

> These statements, made in the context of the Frequently Asked Questions section, clearly indicate your suggestion that PURELL® Healthcare Advanced Hand Sanitizers are intended for reducing or preventing disease from the Ebola virus, norovirus, and influenza. As such, the statements are evidence of your products' intended uses. However, FDA is currently not aware of any adequate and well-controlled studies demonstrating that killing or decreasing the number of bacteria or viruses on the skin by a certain magnitude produces a corresponding clinical reduction in infection or disease caused by such bacteria or virus.

> Based on the above claims, PURELL® Healthcare Advanced Hand Sanitizers are drugs as defined by section 201(g)(1)(B) of the FD&C Act, 21 U.S.C. 321(g)(1)(B), because they are intended for the diagnosis, cure, mitigation, treatment, or prevention of disease, and/or under section 201(g)(1)(C) of the FD&C Act, 21 U.S.C. 321(g)(1)(C), because they are intended to affect the structure or any function of the body. Further, your PURELL® Healthcare Advanced Hand Sanitizers, which are formulated with ethyl alcohol, are intended for use as both consumer antiseptic rubs and health care antiseptic rubs. Although the individual products claim to be "designed for healthcare environments," consumers can buy these products from the websites linked to the "Where to Buy" tabs listed on your product website.

> Furthermore, PURELL® Healthcare Advanced Hand Sanitizers are new drugs within the meaning of section 201(p) of the FD&C Act, 21 U.S.C. 321(p), because they are not generally recognized as safe and effective for use under the conditions prescribed, recommended, or suggested in their labeling. New drugs may not be introduced or delivered for introduction into interstate commerce without prior approval from FDA, as described in section 505(a) of the FD&C Act, 21 U.S.C. 355(a). No FDA approved applications pursuant to section 505 of the Act, 21 U.S.C. 355, are in effect for your PURELL® Healthcare Advanced Hand Sanitizers, nor are we aware of any adequate and well controlled clinical trials in the published literature that support a determination that PURELL® Healthcare Advanced Hand Sanitizers are generally recognized as safe and effective for use under the conditions suggested, recommended, or prescribed in their labeling. Accordingly, PURELL® Healthcare Advanced Hand Sanitizers are unapproved new drugs marketed in violation of sections 505(a) and 301(d) of the FD&C Act, 21 U.S.C 355(a) and 331(d).

We note that your website suggests that PURELL® Healthcare Advanced Hand Sanitizers are marketed under the OTC Drug Review and that they are formulated with ethyl alcohol. For OTC drug products intended for use as consumer antiseptic rubs, on April 12, 2019, FDA published the Safety and Effectiveness of Consumer Antiseptic Rubs; Topical Antimicrobial Drug Products for Over-the-Counter Human Use Final Rule (84 FR 14847) (effective April 12, 2020). FDA deferred consideration of benzalkonium chloride, ethyl alcohol, and isopropyl alcohol in the 2019 Consumer Antiseptic Rub Final Rule (for additional information, see Docket No. FDA–2016–N–0124 at https://www.regulations.gov).

For OTC drug products intended for use as health care antiseptics, on December 20, 2017, FDA published the Safety and Effectiveness of Health Care Antiseptics; Topical Antimicrobial Drug Products for Over-the-Counter Human Use Final Rule (82 FR 60474, December 20, 2017). In the 2017 Final Rule for Health Care Antiseptics, FDA announced it had deferred rulemaking on six active ingredients for specific OTC Health care antiseptic uses. Included in those six active ingredients are alcohol (also referred to as ethanol or ethyl alcohol) for use in a health care personnel hand rub or surgical hand rub (for additional information, see Docket No. FDA-2015-N-0101 at https://www.regulations.gov).

Until FDA promulgates final rules establishing whether ethyl alcohol, as one of the deferred ingredients listed in the two rules above, is generally recognized as safe and effective (GRASE) for the antiseptic uses described above, the agency generally does not intend to object to the marketing of products, provided they meet the proposed formulation and labeling conditions described in the relevant tentative final monograph (TFM) and each general condition in 21 CFR 330.1 and provided that a particular product does not constitute a hazard to health. Such marketing, however, is subject to the risk that a final rule may require reformulation, relabeling, and/or FDA approval under section 505 of the FD&C Act, 21 U.S.C. 355.

Your PURELL® Healthcare Advanced Hand Sanitizer products do not comply with the relevant TFM.

Your labeling claims that PURELL® Healthcare Advanced Hand Sanitizers are effective in preventing disease or infection from pathogens such as Ebola, MRSA, VRE, norovirus, flu, and Candida auris, and in preventing the spread of infection, go beyond merely describing the general intended use of a topical antiseptic as set forth in the above-referenced relevant rulemakings. Furthermore, the claims on your product websites suggest that PURELL® Healthcare Advanced Hand Sanitizers are effective in reducing illness or disease-related student and teacher absenteeism also go beyond merely describing the general intended use of a topical antiseptic as set forth in the above-referenced relevant rulemakings. Such claims are not described in any OTC final rule, the above-referenced TFM (see 59 FR 31402, June 17,1994), or any rulemakings being considered under the OTC Drug Review. Additionally, we are unaware of any adequate and well-controlled clinical trials in the published literature that support a determination that PURELL®

Healthcare Advanced Hand Sanitizers are GRASE for the above-described intended uses. Furthermore, we are not aware of a similar OTC product as formulated and labeled that was available in the United States market on or before the inception of the OTC Drug Review.

Therefore, as formulated and labeled, the PURELL® Healthcare Advanced Hand Sanitizer products are not covered under any OTC monograph or ongoing rulemaking that sets forth conditions for general recognition of safety and effectiveness for such uses. Moreover, no product intended to prevent disease or infection from specific pathogens, such as MRSA, VRE, norovirus, flu, and Candida auris; intended to prevent the spread infections; or intended to reduce illness or disease-related student and teacher absenteeism, is being considered under FDA's OTC Drug Review. Furthermore, we are not aware of evidence demonstrating that the PURELL® Healthcare Advanced Hand Sanitizer products as formulated and labeled are generally recognized by qualified experts as safe and effective for use under the conditions suggested, recommended, or prescribed in their labeling.

28.     The Warning Letter concluded that the "violations cited in this letter are not intended to be an all-inclusive list of deficiencies regarding your products," reminded Defendant of its responsibility "for investigating and determining the causes of these violations and for preventing their recurrence and the occurrence of other violations" and urged Defendant to "take prompt action to correct the violations cited in this letter" or face the possibility of "legal action."

29.     The Warning Letter makes clear that Defendant made and/or continue to make false and misleading statements in the labeling and other marketing materials for the Products by representing that the Products prevented or reduced disease even though there was no reasonable scientific or other basis for Defendant to make such claims.

30.     The FDA's position on the lack of scientific evidence establishing Defendant's claims that the Products prevented or reduced illness and disease is consistent with the findings and recommendations of the Center for Disease Control ("CDC"). The CDC "recommends washing hands with soap and water whenever possible," as opposed to using alcohol-based hand sanitizers such as the Products "because handwashing reduces the amounts of all types of germs

and chemicals on hands."[2] According to the CDC, "[a]lcohol-based hand sanitizers can quickly reduce the number of microbes on hands in some situations, but sanitizers do not eliminate all types of germs." The CDC, citing various scientific studies, explains as follows:

> Soap and water are more effective than hand sanitizers at removing certain kinds of germs, like Cryptosporidium, norovirus, and Clostridium difficile. Although alcohol-based hand sanitizers can inactivate many types of microbes very effectively when used correctly, people may not use a large enough volume of the sanitizers or may wipe it off before it has dried.

The CDC also notes that "[h]and sanitizers may not be as effective when hands are visibly dirty or greasy."

31.     The Defendant sells a very large volume of the Products, and Defendant notes in several parts of its advertising (as well as on its website and on the labels of the Products themselves) that the Products are the leading brand for hand sanitizer in the country. The recent outbreak of the coronavirus has greatly increased demand for the Products.

32.     Through the many false and misleading representations made by Defendant regarding the Products' effectiveness against infection and disease, including without limitation that the Products "kill[] 99.99% of illness causing germs," and the implication from the use of a specific statistic in that representation—that there exists a sound, scientific basis for the statistical claim, the Defendant created an image, aura and reputation that the Products kill 99.99% of germs that cause illness.

33.     By misleadingly suggesting the Products were clinically proven to be effective in preventing diseases and illnesses, without any legitimate scientific testing to support those representations, Defendant has misled Plaintiffs and Class members, who have not received the

---

[2] https://www.cdc.gov/handwashing/show-me-the-science-hand-sanitizer.html#fourteen.

product promised, i.e., a product proven to kill 99.99% of germs that cause illness. If Defendant had not made the false and misleading claims regarding the Products on the labels and in marketing materials, Plaintiffs would not have purchased the Products or would not have paid as much for the Products.

34.     Reasonable purchasers, including Plaintiffs, would have reasonably believed based on the substance of Defendant's representations that the scientific claims Defendant made on the Product labels and in its advertising materials were supported by scientific testing and consistent with the recommendations of leading health authorities and were thus misled into believing in the Products' effectiveness. That is, this is not a case where a company simply made an unsubstantiated claim; instead, Defendant's representations by their substance and nature falsely implied substantiation when there was none.

35.     Defendant knew or should have known that its claims regarding the Products were false and misleading, and would cause consumers like Plaintiffs and the members of the classes to purchase the product under false beliefs.

36.     Defendant's labeling and marketing of the Products is designed to and does mislead consumers such as Plaintiffs and the Class members.

37.     Defendant's false and misleading claims allowed it to sell more of the Products, at a higher price, and therefore make more profits than it would have made had it not made false and misleading claims.

38.     The Products, in part due to the claims regarding the Products' purported higher concentration and effectiveness compared to other brands, were sold at a higher price per unit that the products of Defendant's competitors, including competitive products that are represented in a non-misleading way. Even setting aside sales price, the Products as represented by Defendant

(products proven to have a particular, proven level of efficacy with respect to harm reduction) had a greater value than the Products that Defendant actually delivered (products for which no sound scientific support exists to represent any particular level of efficacy).

39.     Plaintiffs bring this action to stop and undo the harm perpetrated by Defendant in its false and misleading label, advertising and statements about the Products. This action seeks to bar the continued dissemination of those false claims through injunctive relief and to reimburse purchasers of the Products through damages and disgorgement of ill-gotten profits.

40.     Plaintiffs purchased the Products. They all relied upon the product's packaging and marketing materials and Defendant's claims regarding the Products' effectiveness against infection and disease, as well as Products' higher effectiveness and/or concentration compared to competing brands. Plaintiffs reasonably relied on the claim or implication made by Defendant that reliable studies had shown the Products' effectiveness and purchased the Products based on that belief.

41.     Because Defendant presented to consumers a product that purported to be effective at preventing infection and disease (and implying effectiveness was supported by scientific studies), while delivering to consumers a product that was unsupported by any reliable studies and which was not as effective as claimed according to leading health authorities, the products Defendant delivered to consumers was substantially less valuable than the products Defendant promised. Had Plaintiffs and Class members known the truth, they would not have bought the Products at all, or would not have bought them at the price at which they were sold. As such, all of the Plaintiffs and Class Members were economically harmed insofar as they paid for a product that was an inferior, unproven alternative to the product that Defendant had represented it was, unable to do what was promised.

## Class Action Allegations

42.     Plaintiffs reallege and incorporate the allegations contained in the paragraphs above.

43.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a Nationwide Class consisting of "All persons who purchased Purell-branded Advanced Hand Sanitizer products anywhere in the United States."

44.     Plaintiff Miller also brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a California Class consisting of "All persons who purchased Purell-branded Advanced Hand Sanitizer products in California from March 13, 2016 to the present."

45.     Plaintiff McDaniel also brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Michigan Class consisting of "All persons who purchased Purell-branded Advanced Hand Sanitizer products in Michigan from March 13, 2014 to the present."

46.     Plaintiff Downing also brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Massachusetts Class consisting of "All persons who purchased Purell-branded Advanced Hand Sanitizer products in Massachusetts from March 13, 2016 to the present."

47.     Wilder also brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of an Oregon Class consisting of "All persons who purchased Purell-branded Advanced Hand Sanitizer in Oregon from March 13, 2016 to the present."

48.     Plaintiffs refer to the Nationwide Class, the California Class, the Michigan Class, Massachusetts Class, and the Oregon Class together as the "Classes." Plaintiffs refer to the California Class, the Michigan Class, Massachusetts Class, and the Oregon Class together as the "State Subclasses."

49.     Excluded from the Classes are: (1) Defendant, any entity in which it has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; and (2) the Judge to whom this case is assigned, any member of the Court's staff and any member of their immediate families.

50.     Plaintiffs reserve the right to amend the definition of the Classes.

51.     This action is properly maintainable as a class action.

52.     There are tens of thousands if not millions of members in each of the Classes. Accordingly, joinder of all members is impractical.

53.     Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the Classes. Among questions of law and fact in common to the Classes are:

a)      Whether Defendant falsely represented and advertised that the Products Defendant marketed and sold were effective in preventing the spread of infection and disease, including flu, norovirus, and ebola;

b)      Whether Defendant falsely represented that the Products were more concentrated and/or more effective than competitors;

c)      Whether Defendant misled and/or was likely to mislead members of the Classes by stating or implying that the Products' effectiveness was supported by reliable, scientific studies when in fact no such studies exist and the Products' effectiveness was disputed by leading health authorities;

d)      With respect to the Nationwide Class, whether Defendant was unjustly enriched by the false and deceptive marketing of the Products;

e)      With respect to the California Class, whether Defendant, in its marketing and sale of the Products, violated the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* and the California False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*;

f)      With respect to the Michigan Class, whether Defendant, in its marketing and sale of the Products, violated the Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.901, *et seq.*;

17

g) With respect to the Oregon Class, whether Defendant, in its marketing and sale of the Products, violated the Oregon Unlawful Trade Practices Law, Or. Rev. Stat. §§ 646.605 *et seq.*;

h) With respect to the Nationwide Class, whether Defendant, in its marketing and sale of the Products, violated the Ohio Consumer Sales Practices Act, Ohio Revised Code § 1345.01, *et seq.*

i) Whether Defendant breached express warranties to Plaintiffs and the Classes;

j) Whether members of the Classes are entitled to injunctive relief preventing Defendant from continuing to make misleading claims about the Products' effectiveness in preventing infection and disease in its advertising and on the Products' labels themselves; and

k) Whether the members of the Classes are entitled to damages and/or restitution for Defendant's violations of law and, if so, the proper measure of damages.

54. Plaintiffs' claims are typical of the claims of each member of each of the Classes in that Plaintiffs allege a common course of conduct by Defendant toward each member of the Classes. Specifically, Defendant was unjustly enriched, breached express warranties and violated the consumer protection laws of various states by falsely representing and advertising that the Products were effective at preventing infection and disease and that reliable scientific studies support such claims. Plaintiffs and the other members of each of the Classes seek identical remedies under identical legal theories. There is no antagonism or material factual variation between Plaintiffs' claims and those of the Classes.

55. Plaintiffs will fairly and adequately protect the interests of the members of the Classes and have retained counsel who have extensive experience prosecuting class actions and who, with Plaintiffs, are fully capable of, and intent upon, vigorously pursuing this action. Plaintiffs do not have any interest adverse to the Classes.

56. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Furthermore, the damage that has been suffered by any individual

18

Class member is likely not enough to sustain the expense and burden of individual litigation. Hence it would be impracticable for all members of the Classes to redress the wrongs done to them individually. There will be no difficulty in the management of this action as a class action.

57.     The prosecution of separate actions against Defendant would create a risk of inconsistent or varying adjudications with respect to the individual Class members, which could establish incompatible standards of conduct for Defendant. In addition, adjudications with respect to individual members of the Classes could, as a practical matter, be dispositive of the interests of the other members of the Classes not parties to such adjudications, or could substantially impede or impair their ability to protect their interests.

58.     The members of the Classes are readily identifiable through receipts, proofs of purchase of the Products, and records maintained by Defendant or its third-party retailers.

59.     Defendant has acted on grounds generally applicable to the Classes with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Classes as a whole.

## **Count I**

### **Unjust Enrichment**

**(On behalf of all Plaintiffs and the Nationwide Class, in the Alternative)**

60.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

61.     This Count is pled on behalf of Plaintiffs and the Nationwide Class.

62.     Defendant was unjustly enriched by the false and deceptive marketing and sale of the Products as alleged herein. Defendant, through its false and misleading representation that the Products are effective against infection and disease (and that there were reliable studies that demonstrated that effectiveness), obtained a benefit from Plaintiffs and other Class Members when

Plaintiffs and other Class Members purchased the Products, which enabled Defendant to obtain profits from those purchases.

63.     Specifically, Defendant receives a direct financial benefit from the sale of the Products to end consumers. Defendant sells its Products to distributors, retailers and other intermediaries, who then sell the Products to end consumers. The sale of the Products by Defendant to end consumers results in revenues that are used by the intermediaries to pay Defendant for its Products. That is, Defendant's success as a business is directly associated with the volume of the sale of the Products to end consumers, such as Plaintiffs and the Class.

64.     Plaintiffs and the members of the Nationwide Class were damaged by their purchases of the Products which were falsely advertised and represented to be effective against infection and disease, and as being supported by reliable studies demonstrating that effectiveness. Specifically, Plaintiffs conferred benefits on Defendant (i.e., payments for products that were not proven to prevent infection and disease), which, under the circumstances, it would be unjust for Defendant to retain. Plaintiffs through this unjust enrichment claim seek recovery of profits that Defendant unjustly obtained through its use of deceptive representations.

**Count II**

**Violation of California's Consumer Legal Remedies Act,**

**Cal. Civil Code §§1750, *et seq.,***

**(On behalf of Plaintiff Miller and the California Class)**

65.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

66.     Plaintiff Miller brings this claim against Defendant on behalf of himself and the California Class.

67.     Plaintiff Miller and each proposed member of the California Class is a "consumer," as that term is defined in California Civil Code section 1761(d).

68.     The Products that Plaintiff Miller and the other members of the California Class purchased are "goods," as that term is defined in California Civil Code section 1761(a).

69.     Defendant is a "person[]" as that term is defined in California Civil Code section 1761(c).

70.     Plaintiff Miller and each member of the California Class's purchase of any of the various Products constituted a "transaction," as that term is defined in California Civil Code section 1761(e).

71.     Defendant's conduct alleged herein violates the following provisions of California's Consumer Legal Remedies Act (the "CLRA"):

   a)    Representing that goods have characteristics, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

   b)    Representing that goods are of a particular standard, quality, or grade, if they are of another (Cal. Civ. Code § 1770(a)(7));

   c)    Advertising goods with intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9)); and

   d)    Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770 (a)(16)).

72.     Defendant falsely represented and advertised that the Products, which they market and sell, are effective at preventing infection and disease.

73.     Defendant falsely stated or implied that reliable, scientific studies proved that effectiveness even when no such studies existed.

74.     Defendant falsely claimed that its product was more concentrated or effective than competitor brands.

75.     Defendant's misrepresentations alleged herein are likely to mislead an ordinary consumer. Plaintiff Miller and the California Class reasonably understood Defendant's representations and omissions to mean that the Products were proven, in reliable studies, to help prevent the spread of infection and disease, and that the Products were more concentrated or effective than competitors.

76.     Defendant's misrepresentations and omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

77.     Plaintiff Miller and the members of the California Class relied upon the Defendant's statements regarding effectiveness and scientific support for those claims.  Plaintiff Miller and members of the California Class relied to their detriment on Defendant's misrepresentations in purchasing the Products.

78.     Defendant is liable to Plaintiff Miller and the members of the California Class for reasonable attorneys' fees as set forth in the CLRA.

79.     Plaintiffs are concurrently filing a declaration, attached as Exhibit A, stating facts demonstrating that this action has been commenced in a county that is the proper place for the trial of this action in accordance Cal. Civ. Code § 1780(d).


**Count III**

**Violation of California's False Advertising Law,**

**California Business & Professions Code, §§17500, *et seq.***

**(On behalf of Plaintiff Miller and the California Class)**

80.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

81.     Plaintiff Miller brings this claim against Defendant on behalf of himself and the California Class.

82.     California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

83.     Plaintiff Miller, individually and on behalf of the California Class, has standing to pursue this claim because he suffered injury in fact and has lost money or property as a result of Defendant's actions set forth above.

84.     Defendant engaged in advertising and marketing to the public and offered for sale the Products in California.

85.     Defendant engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the sale of the Products to consumers such as Plaintiff Miller and members of the California Class.

86.     Defendant's advertising and marketing representations regarding the Products is false, misleading, and deceptive within the definition, meaning and construction of California Business & Professions Code §§ 17500, et seq. (False Advertising Law).

87.     Defendant's misrepresentations and omissions alleged herein were the type of misrepresentations that are material, i.e., a reasonable person would attach importance to them and would be induced to act on the information in making purchase decisions.

88.     Defendant's misrepresentations and omissions alleged herein are objectively material to a reasonable consumer, and therefore reliance upon such misrepresentations may be presumed as a matter of law.

89.     At the time it made the misrepresentations and omissions alleged herein, Defendant knew or should have known that they were untrue or misleading and acted in violation of California Business & Professions Code §§ 17500, *et seq.*

90.     As a result of Defendant's conduct and actions, Plaintiff Miller and each member of the California Class has been injured and is entitled to relief. Plaintiff Miller and the California Class seek restitution, injunctive relieve, and all other relief permitted under California Business & Professions Code §§ 17500, *et seq.*

91.     Plaintiff Miller and each member of the California Class additionally seek attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5.

## Count IV

**Violation of California's Unfair Competition Law,**

**California Business & Professions Code §§ 17200, *et seq.***

**(On behalf of Plaintiff Miller and the California Class)**

92.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

93.     Plaintiff Miller brings this claim against Defendant on behalf of himself and the California Class.

94.     California's Unfair Competition Law ("UCL") prohibits unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq.]."

95.     Plaintiff Miller has standing to pursue this claim because Plaintiff Miller has suffered injury in fact and has lost money or property as a result of Defendant's actions.  Plaintiff

Miller would not have purchased the Products, or would have paid less for them, had Defendant not engaged in unlawful, deceptive and/or unfair business practices as set forth herein.

96.    Defendant's actions and conduct as alleged in this Class Action Complaint constitute an "unlawful" practice within the definition, meaning, and construction of California's UCL because Defendant violated California's False Advertising Law (Bus. & Prof. Code §§ 17500, *et seq*.) and the CLRA (Civ. Code §§ 1750, *et seq*.).

97.    Defendant's actions and conduct as alleged herein also constitute an "unlawful" practice within the definition, meaning, and construction of California's UCL because Defendant violated California's Sherman Law, Cal. Health & Safety Code §§ 109925 by selling the Products as "new drugs" "intended for the diagnosis, cure, mitigation, treatment, or prevention of disease" that were not approved by the California Department of Human Services or the FDA, and by marketing the Products by using unsubstantiated claims.

98.    Defendant's actions and conduct as alleged in this Complaint constitute an "unfair" practice within the definition, meaning, and construction of California's UCL because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to their customers. The harm caused by Defendant's wrongful conduct outweighs any utility of such conduct and has caused—and will continue to cause—substantial injury to Plaintiff Miller and the California Class. Additionally, Defendant's conduct is "unfair" because it violated the legislatively declared policies in California's False Advertising Law (Bus. & Prof. Code §§ 17500, *et seq*.) and the CLRA (Civ. Code §§ 1750, *et seq*.).

99.    Defendant's actions as alleged in this Complaint constitute a "fraudulent" practice within the definition, meaning, and construction, of California's UCL because Defendant's

representations that the Products were effective against infection and disease, and that reliable studies proved that claim, are false and likely to deceive the public.

100. As a result of Defendant's "unlawful," "fraudulent," and "unfair" conduct, Plaintiff Miller and members of the California Class paid inflated prices for the Products, insofar as the products they purchased were worth substantially less than the products promised by Defendant, and Plaintiff Miller and members of the California Class did not obtain the characteristics and specifications of the Products promised by Defendant. Defendant's conduct directly and proximately caused Plaintiff Miller and the California Class actual monetary damages in the form of the price paid for the Products.

101. The injuries, damages, and harm caused to Plaintiff Miller and the California Class by Defendant's unfair conduct are not outweighed by any countervailing benefits to consumers or competition, and the injury is one that consumers themselves could not reasonably have avoided. Defendant knew or had reason to know that Plaintiff Miller and the California Class could not have reasonably known or discovered that there are no reliable studies showing that the Products are effective against infection or disease. Had Defendant not claimed that the Products were effective against infection or disease (or admitted that no reliable studies proved that effectiveness), Plaintiff Miller and the California Class would not have purchased the Products or would have paid less for them.

102. Defendant's wrongful business practices alleged herein constitute a continuing course of unfair competition because Defendant markets and sells its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to its customers. In accordance with California Business &

Professions Code § 17203, Miller and the California Class seek an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices.

103.     Plaintiff Miller and the California Class also seek an order requiring Defendant to make full restitution of all moneys it has wrongfully obtained from Plaintiff Miller and the California Class, along with all other relief permitted under the UCL.

104.     Plaintiff Miller and each member of the California Class additionally seek attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5.

## Count V

### Breach of Express Warranty

### Cal. Com. Code § 2104(1) *et seq.*

### (On behalf of Plaintiff Miller and the California Class)

105.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

106.     Miller brings this claim individually and on behalf of the California Class.

107.     Defendant is and was at all relevant times a "seller" under Cal. Com. Code § 2103(1)(d) and a "merchant" under Cal. Com. Code § 2104(1).

108.     The Products are and were at all relevant times "goods" within the meaning of Cal. Com. Code § 2105(1).

109.     In connection with the purchase of each of its Products, Defendant expressly warranted that the Products help prevent infection as well as diseases like the flu and the common cold, including by warranting that "Purell Advanced Hand Sanitizer kills 99.99% of illness causing germs."

110.    Defendant's warranties regarding the Products ability to prevent infection and diseases and to kill 99.99% of illness causing germs formed a basis of the bargain when Plaintiff Miller and the California Class purchased the Products.

111.    Defendant breached its express warranties insofar as the Products are not in fact proven to prevent infection and diseases and to kill 99.99% of illness causing germs.

112.    Defendant received notice of its breach via the FDA Warning Letter and other consumer complaints filed against it, including the present Complaint and similar legal actions, and therefore has actual knowledge of its breaches of express warranty.

113.    As a direct and proximate result of Defendant's breaches of express warranty, Miller and the California Class have been damaged in an amount to be proven at trial.

## Count VI

### Violation of the Michigan Consumer Protection Act,

### Michigan Comp. Laws Ann. § 445.901 *et seq.*

### (On Behalf of McDaniel and the Michigan Class)

114.    Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

115.    Plaintiff McDaniel brings this claim against Defendant on behalf of himself and the Michigan Class.

116.    Defendant has engaged in deceptive, unfair, fraudulent and/or misleading commercial practices in the advertising, promotion, marketing, distribution and sale of the Products. In doing so, Defendant has engaged in unfair and deceptive acts or practices in the conduct of trade or commerce, in violation of Michigan Comp. Laws Ann. § 445.903 —otherwise known as the "Michigan Consumer Protection Act."

117.    Specifically, Section 903 of the Act provides in relevant part as follows:

Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful and are defined as follows: *** (e) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. *** (g) Advertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented. *** (s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer. *** (bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is. *** (cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

118.    The Michigan Consumer Protection Act applies to all claims of the members of the Michigan Class because the conduct which constitutes violations of that Act by Defendant occurred within the state of Michigan.

119.    Plaintiff McDaniel and members of the Michigan Class, as purchasers of the Products, are consumers within the meaning of the Michigan Consumer Protection Act because Defendant's business practices involve trade or commerce, are addressed to the market generally, and otherwise implicate consumer protection concerns.

120.    Defendant represented that the Products had characteristics, uses, benefits, or qualities that they did not have—specifically, that they were effective in preventing infection and disease and that reliable studies proved that claim.

121.    Defendant misled consumers by stating, in advertising and on the Products' labels, that the Products were effective at preventing infection and disease and that reliable studies confirmed that effectiveness. Defendant owed a duty to disclose that the claims were not supported by reliable studies to make their continued use of various claims not misleading.

122.    In its advertising, promotion, and marketing of the Products, Defendant misrepresented material facts to, and omitted material facts from, Plaintiff McDaniel and other members of the Michigan Class with respect to the formulation and effectiveness of the Products.

123.     Defendant's practices, as detailed herein, violated the Michigan Consumer Protection Act.

124.     Plaintiff McDaniel and members of the Michigan Class relied upon the claims made by Defendant regarding the Products, and were misled into believing the Products were effective against infection and disease, and that reliable studies confirmed that effectiveness. Defendant intended that Plaintiff McDaniel and the members of the Michigan Class would rely on the deception by purchasing the Products, unaware of the material fact that no reliable studies had confirmed any of the claims regarding the Products' effectiveness against infection and disease. Members of the Michigan Class may be presumed to have relied upon the representation that the Products were effective against infection and disease, and that reliable studies confirmed that effectiveness.

125.     Plaintiff McDaniel and members of the Michigan Class were entitled to know that the Defendant's claims about the Products' effectiveness was not supported by reliable studies, as that fact would be material in a consumer's purchasing decision.

126.     Plaintiff McDaniel and members of the Michigan Class would not have purchased the Products had Defendant represented otherwise.

127.     As a direct and proximate result of Defendant's violations of the Michigan Consumer Protection Act, Plaintiff McDaniel and other members of the Michigan Class have suffered ascertainable losses, which include but are not limited to, the costs they incurred paying for a product which was not the one that had been represented to them, and that the product they received (a product unproven in its effectiveness against infection and disease) was less valuable than the product represented to them (a product proven in its effectiveness against infection and disease). Accordingly, Plaintiff McDaniel and other members of the Michigan Class were harmed

by, and Defendant is liable for, Defendant's actions in violation of the Michigan Consumer Protection Act.

## Count VII

**Breach of Express Warranty**

**Mich. Comp. Laws § 440.2104(1)** *et seq.*

**(On behalf of Plaintiff McDaniel and the Michigan Class)**

128.    Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

129.    Plaintiff McDaniel brings this claim individually and on behalf of the Michigan Class.

130.    Defendant is and was at all relevant times a "seller" under Mich. Comp. Laws § 440.2103(1)(c) and a "merchant" under Mich. Comp. Laws § 440.2104(1)

131.    The Products are and were at all relevant times "goods" within the meaning of Mich. Comp. Laws § 440.2105(1).

132.    In connection with the purchase of each of its Products, Defendant expressly warranted that the Products help prevent infection as well as diseases like the flu and the common cold, including by warranting that "Purell Advanced Hand Sanitizer kills 99.99% of illness causing germs."

133.    Defendant's warranties regarding the Products ability to prevent infection and diseases and to kill 99.99% of illness causing germs formed a basis of the bargain when Plaintiff McDaniel and the Michigan Class purchased the Products.

134.    Defendant breached its express warranties insofar as the Products are not in fact proven to prevent infection and diseases and to kill 99.99% of illness causing germs.

135.   Defendant was provided with notice of its breach via the FDA Warning Letter and other consumer complaints filed against it, including the present Complaint and similar legal actions, and therefore has actual knowledge of its breaches of express warranty.

136.   As a direct and proximate result of Defendant's breaches of express warranty, Plaintiff McDaniel and the Michigan Class have been damaged in an amount to be proven at trial.

## Count VIII

**Breach of Express Warranty, Massachusetts Law**

**(On behalf of Plaintiff Downing and the Massachusetts Class)**

137.   Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

138.   Plaintiff Downing brings this claim against Defendant on behalf of himself and the Massachusetts Class.

139.   Defendant provided an express warranty to Plaintiff Downing and the Massachusetts Class at the time of sale.

140.   The express warranty provided that the Products help prevent infection as well as diseases like the flu and the common cold, including by warranting that "Purell Advanced Hand Sanitizer kills 99.99% of illness causing germs."

141.   Defendant breached its express warranties insofar as the Products are not in fact proven to be able to prevent infection and diseases and to kill 99.99% of illness causing germs.

142.   As a direct and proximate result of Defendant's breaches of express warranty, Plaintiff Downing and the Massachusetts Class have been damaged in an amount to be proven at trial.

## Count IX

**Violation of the Oregon Unlawful Trade Practices Law, Or. Rev. Stat. §§ 646.605 *et seq*.**

**(On behalf of Plaintiff Wilder and the Oregon Class)**

143. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

144. Plaintiff Wilder brings this claim against Defendant on behalf of himself and the Oregon Class.

145. Plaintiff, the Oregon Class and Defendant are "persons" under Or. Rev. Stat. § 646.605(4).

146. Defendant is engaged in "trade" or "commerce under Or. Rev. Stat. § 646.605(8).

147. The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits unfair or deceptive acts conduct in trade or commerce. Or. Rev. Stat. § 646.608.

148. Defendant has engaged in deceptive, unfair, fraudulent and/or misleading commercial practices in the advertising, promotion, marketing, distribution and selling of the Products in violation of the Oregon UTPA.

149. Defendant falsely represented and advertised that the Products were effective and preventing the spread of infection and disease and that reliable studies confirmed that effectiveness.

150. Defendant misled consumers by continuing to make those effectiveness claims and failing to disclose to consumers such as Plaintiff Wilder and the Oregon Class that no reliable studies confirmed that effectiveness. Defendant owed a duty to disclose the fact that no reliable studies confirmed the Products' effectiveness in preventing infection and disease, a fact which Defendant knew but did not disclose.

151. Defendant's conduct was objectively deceptive, and had the capacity to deceive reasonable consumers under the circumstances. The fact that the Products Defendant marketed and

sold were not proven in a reliable study to be effective against disease and infection was a material fact to which a reasonable consumer would attach importance at the time of purchase.

152.    Defendant intentionally and knowingly misrepresented material facts regarding the Products with the intent to mislead Plaintiff Wilder and the Oregon Class members.

153.    Defendant knew or should have known that its conduct violated the Oregon UTPA.

154.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Wilder and the Oregon Class members.

155.    Plaintiff Wilder and the Oregon Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information. Plaintiff Wilder and the Oregon Class members who purchased the Products would not have purchased them or would have paid significantly less for them if they had known that the Products were not proven to prevent or reduce illness.

156.    Defendant had an ongoing duty to Plaintiff Wilder and the Oregon Class to refrain from unfair and deceptive practices under the Oregon UTPA.

157.    Defendant's violations present a continuing risk to Plaintiff Wilder, the Oregon Class and the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

158.    Pursuant to Or. Rev. Stat. § 646.638, Plaintiff Wilder and the Oregon Class seek an order enjoining Defendant's unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Oregon UTPA.

## Count X

### Breach of Express Warranty

### Or. Rev. Stat. § 72.1040(1) *et seq.*

### (On behalf of Plaintiff Wilder and the Oregon Class)

159.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

160.     Plaintiff Wilder brings this claim individually and on behalf of the Oregon Class.

161.     Defendant is and was at all relevant times a "seller" under Or. Rev. Stat. § 72.1030(1)(d)  and a "merchant" under Or. Rev. Stat. § 72.1040(1).

162.     The Products are and were at all relevant times "goods" within the meaning of  Or. Rev. Stat. §§ 72.1050(1).

163.     In connection with the purchase of each of its Products, Defendant expressly warranted that the Products help prevent infection as well as diseases like the flu and the common cold, including by warranting that "Purell Advanced Hand Sanitizer kills 99.99% of illness causing germs."

164.     Defendant's warranties regarding the Products' ability to prevent infection and diseases and to kill 99.99% of illness causing germs formed a basis of the bargain when Plaintiff Wilder and the Oregon Class purchased the Products.

165.     Defendant breached its express warranties insofar as the Products are not in fact proven to prevent infection and diseases and to kill 99.99% of illness causing germs.

166.     Defendant was provided with notice of its breach via the FDA Warning Letter and other consumer complaints filed against it, including the present Complaint and similar legal actions, and therefore has actual knowledge of its breaches of express warranty.

167.     As a direct and proximate result of Defendant's breaches of express warranty, Plaintiff Wilder and the Oregon Class have been damaged in an amount to be proven at trial.

## Count XI

### Violation of the Ohio Consumer Sales Practices Act

### Ohio Revised Code § 1345.01

### (On behalf of Plaintiffs and the Nationwide Class)

168.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

169.     Plaintiffs bring this claim individually and on behalf of the Nationwide Class.

170.     Defendant is a supplier within the definition of the Ohio Consumer Sales Practices Act, Ohio Revised Code § 1345.01, as it supplied and manufactured the Products that Plaintiff and members of the Class purchased.

171.     Plaintiffs and the Nationwide Class are consumers as defined in Ohio Revised Code § 1345.01 who purchased the Products for personal, family or household use.

172.     Plaintiffs and the Nationwide Class purchased the Products based on Defendant's false and misleading statements on the labels and/or other marketing materials, including that the Products prevent and/or reduce disease and illness when the Products do not in fact prevent disease/or reduce illness as represented. These were consumer transactions.

173.     In the absence of such false and misleading statements, Plaintiffs and the Nationwide Class would not have purchased the Products at all or would not have purchased them at the price at which they were sold.

174.     Defendant's false and misleading statements regarding the Products were material to a reasonable consumer and were designed to and did affect consumer decisions and conduct, including the decisions by Plaintiffs and the Nationwide Class to purchase the Products at the price they purchased them.

175.     Defendant's false and misleading statements regarding the Products constitute unfair, deceptive and/or unconscionable acts or practices in connection with consumer

transactions, offend public policy as established by statute and/or are immoral, unethical, oppressive and unscrupulous.

176.    Defendant's conduct substantially injured consumers, including Plaintiffs and the Nationwide Class, in each of the states in which the Products were sold. Defendant's conduct directly, foreseeably and proximately caused Plaintiffs and the Nationwide Class to suffer an ascertainable loss when they paid a premium for the Products beyond what they should have paid. As Defendant knows, Plaintiffs and Class members would not have paid the prices they paid for the Products absent Defendant's false and misleading representations about the Products' disease and illness prevention capabilities. These injuries are not outweighed by any countervailing benefits to consumers.

177.    In light of Defendant's false and misleading statements regarding the Products, consumers such as Plaintiffs and the Nationwide Class could not have reasonably avoided the losses caused by such false and misleading statements.

178.    As described herein, Defendant violated Ohio Revised Code § 1345.02 by:

a) Committing unfair or deceptive acts or practices in connection with consumer transactions. *Id.* § 1345.02(A);

b) Representing the Products have sponsorship, approval, performance characteristics, accessories, uses, or benefits that they do not have. *Id.* § 1345.02(B)(1);

c) Representing the Products are of a particular standard, quality, grade, style, prescription, or model that they are not. *Id.* § 1345.02(B)(2); and

d) Representing the Products have been supplied in accordance with previous representations when they have not. *Id.* 1345.02(B)(5).

179.    As described herein, Defendant also violated Ohio Revised Code § 1345.03(A) by committing unconscionable acts or practices in connection with consumer transactions. In particular, Defendant:

a) knew at the time the consumer transactions were entered into of the inability of the Plaintiffs and Nationwide Class to receive substantial benefits from the subject of the consumer transactions, *id.* § 1345.03(b)(3); and

b) knowingly made misleading statements of opinion on which the Plaintiffs and Nationwide Class were likely to rely to their detriment, *id.* § 1345.03(b)(6).

180.    As described herein, Defendant's false and misleading statements regarding the Products also violated the following regulations:

a) Ohio Administrative Code 109:4-3-02(A)(1), which provides that:

It is a deceptive act or practice in connection with a consumer transaction for a supplier, in the sale or offering for sale of goods or services, to make any offer in written or printed advertising or promotional literature without stating clearly and conspicuously in close proximity to the words stating the offer any material exclusions, reservations, limitations, modifications, or conditions. Disclosure shall be easily legible to anyone reading the advertising or promotional literature and shall be sufficiently specific so as to leave no reasonable probability that the terms of the offer might be misunderstood.; and

b) Ohio Administrative Code 109:4-3-10(A), which provides that:

It shall be a deceptive act or practice in connection with a consumer transaction for a supplier to…

Make any representations, claims, or assertions of fact, whether orally or in writing, which would cause a reasonable consumer to believe such statements are true, unless, at the time such representations, claims, or assertions are made, the supplier possesses or relies upon a reasonable basis in fact such as factual, objective, quantifiable, clinical or scientific data or other competent and reliable evidence which substantiates such representations, claims, or assertions of fact….

181.     Defendant was on notice before the filing of this suit that its conduct in misleading consumers about the Products violated the Ohio Consumer Sales Practices Act, including without limitation through various cases in the Ohio Attorney General's Public Inspection File regarding companies making false or misleading health-related claims regarding their drug or other products.

182.     Plaintiffs and the Nationwide Class are entitled to recover damages and/or other appropriate relief as a result of Defendant's misconduct described herein.

183.     Plaintiffs and the Nationwide Class conferred a monetary benefit on Defendant by purchasing the Products, which benefit Defendant accepted and retained and as a result of which Defendant profited.

184.     Plaintiffs and the Nationwide Class relied on the Defendant's false, misleading and inequitable labeling and advertisement of the Products described herein, yet Defendant failed to provide Plaintiffs and the Nationwide Class with the benefits advertised.

185.     It would be unjust to permit Defendant to retain the benefits Plaintiff and the Nationwide Class conferred on it, such that Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and the Nationwide Class, proceeds that it unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiffs and the Nationwide Class overpaid.

## **Prayers for Relief**

WHEREFORE, Plaintiffs pray for relief in the form of an order as follows:

(a)     Certifying this action as a class action under Federal Rule of Civil Procedure 23, and appointing Plaintiffs as class representatives and their attorneys as class counsel;

(b)     Awarding actual damages and/or restitution to Plaintiffs and the Members of the Nationwide Class and the State Subclasses and/or awarding to

Plaintiffs and the Classes the amounts by which Defendant was unjustly enriched as a result of its wrongful conduct;

(c)     Awarding double or treble damages pursuant to the applicable state statutes;

(d)     Enjoining Defendant from continuing to engage in the unlawful and deceptive conduct described herein;

(e)     Awarding attorneys' fees, expenses, and the costs of this suit, together with prejudgment and post-judgment interest at the maximum rate allowed by law; and

(f)     Awarding such other and further relief which the Court finds just and proper.

## **Jury Demand**

Plaintiffs demand a trial by jury on all claims so triable.

Dated: March 13, 2020                          By their attorneys,

*/s/ Tim L. Collins*
Tim L. Collins (Ohio Bar No. 0033116)
Ezio A. Listati (Ohio Bar No. 0046703)
**Thrasher Dinsmore & Dolan**
1111 Superior Avenue, Suite 412
Cleveland, OH 44114
(216) 255-5431 – Telephone
(216) 255-5450 – Facsimile
tcollins@tddlaw.com

Edward F. Haber (Mass. BBO # 215620)
Ian J. McLoughlin (Mass. BBO # 647203)
**Shapiro Haber & Urmy LLP**
Seaport East
Two Seaport Lane, Floor 6
Boston, MA 02210
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
imcloughlin@shulaw.com

Robert C. Schubert (Cal. Bar No. 62684)
Dustin L. Schubert (Cal. Bar No. 254876)
Noah M. Schubert (Cal. Bar No. 278696)
Kathryn Y. McCauley (Cal. Bar No. 265803)
**Schubert Jonckheer & Kolbe LLP**
Three Embarcadero Center, Suite 1650
San Francisco, California 94111
Telephone: (415) 788-4220
Facsimile: (415) 788-0161
rschubert@sjk.law
dschubert@sjk.law
nschubert@sjk.law
kmccualey@sjk.law